**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FREDDIE VARGAS,**

        **Plaintiff,**

**v.**                                            **Case No:   6:19-cv-1842-Orl-37EJK**

**STRADA SERVICES, INC.,**

        **Defendant.**
_____/

**ORDER**

This cause comes before the Court on the parties' Joint Motion to Approve Settlement Agreement and to Dismiss with Prejudice ("the Motion"), filed January 13, 2020. (Doc. 13.) Upon consideration, the Motion is due to be granted.

**I.    BACKGROUND**

On September 25, 2019, Plaintiff, Freddie Vargas, initiated this case against Defendant, Strada Services, Inc., alleging violations of the overtime wage compensation provision of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219 (2018). (Doc. 1, ¶¶ 43–47.) In the Complaint, Plaintiff alleged that he worked as an electrician for Defendant from August 7, 2018 to November 9, 2018. (*Id.* ¶¶ 15–16.) Throughout the course of his employment, Plaintiff routinely worked 50 to 60 hours per week and occasionally would work 6 days a week. (*Id.* ¶¶ 19–20.) Plaintiff also alleged that Defendant misclassified him as an exempt employee under the FLSA when he was actually entitled to a rate of one and a half times his regular rate for the hours he worked in excess of 40 hours per week. (*Id.* ¶ 21–22.)

Prior to Defendant's filing an answer and Plaintiff's answering the Court's interrogatories, the parties negotiated a compromise and settlement of Plaintiff's claim and filed a motion for

approval of their settlement agreement (the "Agreement") on January 13, 2020, pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (Doc. 13.)[1]

**II.     STANDARD**

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores, Inc. v. United States ex. rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354–55. If a settlement is not

---

[1] While the Complaint included collective action allegations, a review of the docket indicates that no other plaintiff opted-in to this action. (Doc. 1).

supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla.

Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[2]

### III. DISCUSSION

#### A. Settlement Sum

According to the Agreement, Defendant has agreed to pay Plaintiff a total amount of $8,000.00, consisting of $4,000.00 in overtime wage compensation and $4,000.00 in liquidated damages. (Doc. 13-1, ¶ 3.) Plaintiff indicated that he originally claimed overtime compensation of approximately $4,143.75 to $8,287.50. (Doc. 13 ¶ 4.) Because Plaintiff will receive less than the amount to which he claimed he was entitled under the FLSA, he has compromised his claim within the meaning of *Lynn's Food*, 679 F.2d at 1354–55.

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid overtime compensation plus an additional, equal amount, as liquidated damages. Title 29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the FLSA] shall be liable to the employee … affected in the amount of their unpaid minimum wages … in an additional equal amount as liquidated damages."). On review, I find the $8,000.00 Plaintiff has agreed to accept in satisfaction of his claims to be fair and reasonable in comparison to Plaintiff's original claim, considering that Plaintiff will receive wage compensation on the low end of what he originally claimed. Moreover, both parties are represented by counsel and wish to avoid the risk and expense of further litigation. Thus, I find that the settlement sum represents a fair resolution of a *bona fide* dispute between the parties and that Plaintiff has not unfairly compromised his claim.

---

[2] *See Bonner v. City of Prichard*, *Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981 are binding on the Eleventh Circuit).

**B.  Attorney's Fees**

Plaintiff's attorney will receive a total of $2,900.00 for fees and costs. (Doc. 13, ¶ 9.) Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The parties represent that this amount was negotiated separately from the amount received by Plaintiff and the settlement is otherwise reasonable on its face; therefore, further review is not required. (Doc. 19 at 3–4); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (If the parties "represent[] that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

**C.  Release**

The parties' settlement agreement contains the following release provision:

> a. This Agreement shall constitute a waiver and release of overtime claim Plaintiff might have under the FLSA against Defendant.
> b. Upon execution of this Agreement, the Parties shall immediately file the Joint Motion for Approval of Settlement and Dismissal with Prejudice with the Court, attached hereto as Exhibit "A."
> c. Plaintiff hereby knowingly and voluntarily releases Defendant of and from all claims brought for overtime compensation under the Fair Labor Standards Act.

(the "Release") (Doc. 13-1, ¶ 2.)

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352.

Unlike *Moreno*, however, the Release here passes judicial scrutiny because it does not require Plaintiff to release unknown claims that are unrelated to his overtime wage claim in this case; rather, the release is limited solely to Plaintiff's FLSA claim against Defendant in this action. *Evans v. Wasser*, No. 8:18-cv-1942-T-36CPT, 2019 WL 2504619, at *2 (M.D. Fla. May 29, 2019), *report and recommendation adopted*, 2019 WL 2503192 (M.D. Fla. June 17, 2019); *Quinones v. Siemens Indus., Inc.*, No. 6:15-cv-1068-ORL-28TBS, 2016 WL 11579796, at *2 (M.D. Fla. Oct. 25, 2016), *report and recommendation adopted*, 2016 WL 11579809 (M.D. Fla. Oct. 27, 2016).

**D.     Amendments**

The Agreement contains a provision that grants the parties leave to amend the Agreement (the "Amendment Provision"). It provides that "[t]his Agreement may not be amended, modified, altered, or changed, except by a written agreement which is both signed by all parties and which makes specific reference to this Agreement." (Doc. 13-1, ¶ 8.) Approval of a settlement agreement with such a provision leaves "the parties free to circumvent *Lynn's Food* review through post hoc modifications of an already-approved agreement." *Dumas v. 1 ABLE REALTY, LLC*, No. 6:17-cv-765-Orl-37KRS, 2018 WL 5020134, at *3 (M.D. Fla. Mar. 9, 2018). As such, I cannot approve an agreement that is not in its "final form, with [] opportunity for amendment." *Id.*

However, this Agreement contains a severability provision which provides:

> Except as set forth below, should any provision of this Agreement set forth herein be declared illegal or unenforceable by any court of competent jurisdiction, such that it cannot be modified to be enforceable, excluding the release language and the payment obligations set forth in sections 2 and 3 above, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

(the "Severability Provision") (Doc. 13-1, 5.) Courts in this District routinely approve settlement

agreements while striking unfair or unenforceable provisions of the agreement when the agreement contains a severability provision. *See*, *e.g.*, *Encarnacion v. Dannix Painting LLC*, No. 6:18-cv-682-Orl-41KRS, 2018 WL 5084749, at *3 (M.D. Fla. Aug. 13, 2018), *report and recommendation adopted*, 2018 WL 5840509 (M.D. Fla. Nov. 8, 2018) (recommending that the contradictory provisions and the general release provision be stricken where the settlement agreement contained a severability provision); *Goern v. Everglades Day Safari, Inc.*, No. 2:16-cv-755-FtM-99MRM, 2017 WL 3328242, at *3 (M.D. Fla. July 14, 2017), *report and recommendation adopted*, No. 2:16-cv-755-FtM-99MRM, 2017 WL 3316369 (M.D. Fla. Aug. 2, 2017) (recommending that the plaintiff's "waiver and general release" provision be stricken where the settlement agreement contained a severability provision); *Ramnaraine v. Super Transp. of Fla., LLC*, No. 6:15-cv-710-Orl-22GJK, 2016 WL 1376358, at *4 (M.D. Fla. Mar. 28, 2016), *report and recommendation adopted*, No. 6:15-cv-710-Orl-22GJK, 2016 WL 1305353 (M.D. Fla. Apr. 4, 2016) (recommending that the non-disparagement and confidentiality provisions be stricken from a settlement agreement that contained a severability provision). As the Severability Provision permits striking the Amendments Provision, the Court will sever the Amendments Provision (Doc 13-1, ¶ 8) from the Agreement.

## IV. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. The parties' Joint Motion to Approve Settlement Agreement and to Dismiss with Prejudice (Doc. 13) is **GRANTED IN PART**;

2. The Amendments Provision (Doc. 13-1, ¶ 8) is **SEVERED**;

3. The parties' Agreement (Doc. 13-1), as revised, is a fair and reasonable resolution of a *bona fide* dispute under the FLSA and is thus **APPROVED**;

4. The case is **DISMISSED WITH PREJUDICE**; and

5. The Clerk of Court is **DIRECTED** to close the file.

**DONED** and **ORDERED** in Orlando, Florida on April 13, 2020.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record